UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHELLE R. WENHOLD,

    Plaintiff,

v.                                                       CASE No. 8:10-CV-2301-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER

The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

I.

The plaintiff, who was thirty-one years old at the time of the administrative hearing and who has a high school education, has worked as

_____

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 16).

a certified nursing assistant, babysitter, and medical assistant (Tr. 50, 70-71). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled on July 18, 2004, due to myasthenia gravis, sleep apnea, high blood pressure, and anxiety (Tr. 228). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "history of myasthenia gravis; diabetes mellitus; disk protrusion at C6-7; status-post tear of right knee; morbid obesity with sleep apnea; and schizoaffective disorder/bipolar disorder with obsessive-compulsive disorder and panic disorder without agoraphobia" (Tr. 18-19).[2] He concluded that, with these impairments, the plaintiff can perform a range of sedentary work with the following restrictions (Tr. 20):

> [S]he is limited to no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling. Any climbing of ladders, ropes, or scaffolding and exposure to unprotected heights

---

[2]Myasthenia gravis is an autoimmune disorder that "destroys or impairs the function of acetylcholine receptors at the postsynaptic neuromuscular junction, interfering with neuromuscular transmission." The Merck Manual (17th ed.), pp. 1497-98. "The most common symptoms are ptosis, diplopia, and muscle fatigability after exercise." Id. at 1498.

> must be avoided. Operation of foot controls with the right lower extremity and all activities that require extensive reading, working with computers, or driving motorized vehicles on a regular basis are precluded. The claimant is limited to simple, routine, repetitive tasks that require simple judgment for basic work-related decisions.

The law judge decided that these limitations prevented the plaintiff from returning to prior employment (Tr. 26). However, based upon the testimony of a vocational expert, the law judge found that there are jobs that exist in significant numbers in the national economy that the plaintiff could perform, such as final assembler, production inspector, and food and beverage clerk (Tr. 27). The law judge therefore ruled that the plaintiff was not disabled (id.). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A),

1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the

witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff attacks the law judge's decision on four grounds. The plaintiff's first heading states that the law judge improperly rejected the opinions of treating physicians and consultative examiners in favor of the opinions of the nonexamining sources. In connection with this argument, the plaintiff claims, second, that the opinions of the state agency physicians were

assigned improper weight. The plaintiff next asserts that the law judge erred in failing to include certain impairments, as established by the treating and consultative physicians, in the hypothetical question. Finally, the plaintiff contends that the law judge improperly relied on two state agency physicians' opinions because they were unsigned (Doc. 18, p. 15).

In light of the scheduling Order, the plaintiff's challenge is limited to these four contentions. The scheduling Order required the plaintiff in her memorandum to "identify with particularity the discrete grounds upon which the administrative decision is being challenged" and to support those challenges "by citations to the record of the pertinent facts and by citations of the governing legal standards" (Doc. 14, p. 2). Notably, the plaintiff makes no challenge to the law judge's credibility determination. Consequently, in view of the scheduling Order, any such challenge is waived. Further, the plaintiff asserts in passing that she attempted to call two witnesses, but was "rebuffed" by the law judge (Doc. 18, p. 5). This assertion was not developed and thus is also waived. Furthermore, it is not accurate to say that the law judge "rebuffed" the attempts to call witnesses, since it was

plaintiff's counsel who indicated that "[t]hey wouldn't add anything" and did not press to have them testify (Tr. 74-75).

The plaintiff argues first that the law judge failed to adequately explain why he rejected the opinions of treating psychiatrist Dr. Marlene P. Hart, treating physicians Dr. Thomas A. DiGeronimo and Dr. Brian Schaub, and consulting psychologist Dr. Lynda Walls. This argument does not warrant reversal.

Opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not doing so. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In this case, the plaintiff submitted forms from the treating physicians (Drs. DiGeronimo, Schaub, and Hart) that essentially opined that the plaintiff was totally disabled (Tr. 453, 460, 466, 468). The law judge expressly stated that he was discounting those opinions because they were not

supported by objective findings in the doctors' notes. Thus, he said, "[t]he severe limitations as opined by Dr. Schaub, Dr. DiGeronimo, and Dr. Hart are not consistent with their own records or medical treatment" (Tr. 24). He added, "Dr. Schaub and Dr. DiGeronimo's opinions as proffered in Residual Functional Capacity (Physical) assessments were provided by the attorney representative and are not commensurate with the essentially normal physical examinations in the medical evidence from each doctor. Their conclusions were based more on the claimant's self reported symptoms and limitations" (Tr. 25), which the law judge found to be not entirely credible. He stated further that "Dr. Hart's Residual Functional Capacity (Mental) form is not consistent with even the GAF [Global Assessment of Functioning] assigned of 55 as recorded in the claimant's records" (id.), which reflects just moderate mental limitations. See Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR)(4th ed., Text Revision), p. 34.

The plaintiff contends, in a conclusory manner and without even mentioning Dr. Schaub, that the conclusions and limitations of Dr. DiGeronimo and Dr. Hart "are well supported by the medical notes and records from those physicians and by the observations and examination of the

claimant" (Doc. 18, p. 11). However, contrary to the scheduling Order, the plaintiff does not even make a single citation to the record in support of this assertion (id.). Consequently, the failure to develop the contention by setting forth facts from the record and a legal analysis constitutes a waiver of this claim.

Furthermore, the Commissioner demonstrates, by extensive citations to the evidence (unlike the plaintiff), that the records of Dr. DiGeronimo and Dr. Hart do not support their extreme limitations (Doc. 19, pp. 7, 10). My own review of their records confirms that the law judge was correct to say that their own records do not support their opinions. The same is true of Dr. Schaub, although the plaintiff did not even assert that his notes support his opinion.

As indicated, opinions of treating physicians may be discounted when they are inconsistent with the physicians' own medical records. That is the situation here. Accordingly, the law judge could reasonably give little probative weight to the forms that Drs. DiGeronimo, Schaub, and Hart filled out.

On this issue, the plaintiff makes a reference to the opinion of examining psychologist, Dr. Lynda Walls (not "Wells," as denominated by the plaintiff), who indicated that the plaintiff "could not regularly attend to a routine and maintain a schedule due to physical difficulties, appeared to have significant difficulty dealing with stress and had a prognosis that was guarded" (Doc. 18, p. 10). The law judge considered the report from Dr. Walls, and pointed to the following salient points (Tr. 22-23):

> The claimant's demeanor and responsiveness to questions was cooperative. Her manner of relating, social skills, and overall presentation was adequate. Eye contact was appropriate. Thought processes were coherent and goal directed with no evidence of delusions, hallucinations, or disordered thinking. She appeared relaxed, comfortable, and always had a ready smile. Dr. Walls reported that vocationally the claimant appeared to be capable of understanding/following simple instructions or directions as well as maintaining attention and concentration to perform simple tasks independently. The claimant appeared capable of learning new tasks described as simple and making appropriate routine decisions as well as relating or interacting appropriately with others.

Furthermore, the statement by Dr. Walls that the plaintiff "cannot regularly attend to a routine and maintain a schedule due to physical difficulties" (Tr.

398) relates to an area outside of Dr. Walls's expertise and could, therefore, be appropriately discounted by the law judge (id.). See 20 C.F.R. 404.1527(d)(5), 416.927(d)(5).

Moreover, Dr. Walls was not a treating physician and, thus, her opinion was not entitled to the weight normally accorded the opinion of a treating psychiatrist or psychologist. In addition, her opinion was rendered in September 2006, which was at the beginning of the administrative process and more than three years before the law judge's decision. More significantly, a nonexamining reviewing psychologist considered Dr. Walls's report and concluded that the plaintiff's mental impairment was not severe (Tr. 400, 412). For these reasons, Dr. Walls's report does not provide any meaningful support to the plaintiff's allegation of total disability, and it certainly does not compel a finding that the plaintiff's mental functional limitations are greater than found by the law judge.

The plaintiff's second contention is that the law judge "relied heavily" on the opinions of state nonexamining physicians, but that they were entitled to little weight (Doc. 18, p. 12). This contention is baseless since the law judge did not rely heavily upon the opinions of the reviewing physicians.

The record contained assessments by Dr. Reuben Brigety and Dr. Eric Puestow, nonexamining reviewing physicians. Dr. Brigety and Dr. Puestow opined that the plaintiff could perform a range of light work (Tr. 385, 445). The law judge did not uncritically accept those opinions. Rather, there are substantial differences between Dr. Brigety's opinion and Dr. Puestow's opinion, and the law judge's residual functional capacity finding, including the doctors' opinion of an ability to perform light work, and the law judge's restriction to sedentary work (compare Tr. 20, 385-90, 445-48). The law judge specifically referred to the reviewers' opinions and explained why he found those assessments somewhat persuasive (Tr. 25):

> Likewise, Reuben Brigety, M.D. and Eric Puestow, M.D. both performed in-depth reviews of the medical evidence, providing assessments independently of each other; however, the conclusions were the same in that the claimant could perform work activity consistent with light exertion. The undersigned concluded that the opinions were somewhat consistent with the medical evidence of record; however, in an abundance of caution, the claimant's residual functional capacity was reduced to no more than sedentary exertion. Therefore, the opinions of Dr. Brigety and Dr. Puestow were considered to be somewhat persuasive. (Exhibit(s) 4F and 9F)

This explanation shows that, contrary to the plaintiff's assertion, the law judge did not rely heavily on the reviewers' opinion. In all events, the plaintiff has failed to show that the weight the law judge gave those opinions was inappropriate.

As her third contention, the plaintiff argues that the law judge erred by failing to pose a complete hypothetical question to the vocational expert. In this regard, she maintains that the law judge should have included all the claimant's other limitations (Doc. 18, p. 14). This argument is meritless.

In the first place, this contention mostly misses the point because the hypothetical question is not supposed to state the plaintiff's impairments, but, rather, the functional limitations from the impairments. See McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986); Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); Davis v. Barnhart, 153 Fed. Appx. 569, 572 (11th Cir. 2005). Here, the law judge did not find that the plaintiff's impairments singularly and in combination created any functional limitations beyond those set forth in the plaintiff's residual functional capacity. The plaintiff has not demonstrated that there were any functional limitations that

should have been set forth in the residual functional capacity, but were not included.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). On the other hand, the law judge is not required to include in the hypothetical question allegations that have been properly rejected. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).

The residual functional capacity found by the law judge clearly matches the pertinent hypothetical question posed to the vocational expert (Tr. 20, 71). Consequently, the hypothetical question is not flawed.

Finally, the plaintiff argues that the law judge erred by relying on the two nonexamining reviewers' opinions because their opinions were unsigned (Doc. 18, p. 15). The plaintiff contends that "nowhere do the reports appear to reflect any type of electronic signature" (id.). This contention is frivolous. As the Commissioner cogently explains (Doc. 19, pp. 13-15), the

printed names at the end of the reports constitute electronic signatures (Tr. 392, 451).

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 16th day of November, 2011.

*[signature]*
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE